# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN W. SLAGLE,

    Petitioner,

-vs-

COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, OHIO,

    Respondent.

:

:

:

:

Case No. 3:08-cv-146

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. §2241 for a writ of habeas corpus. Petitioner pleads one ground for relief: that his re-trial in the Montgomery County Common Pleas Court would violate the Fifth Amendment Double Jeopardy Clause (Petition, Doc. No. 1).

### Procedural History

Petitioner John W. Slagle was indicted[1] (RE No. 3) on two counts of aggravated theft in the Montgomery County Common Pleas Court. Upon waiver of a jury, the case was tried to Common

---

[1] Unlike the usual post-conviction habeas corpus case, this case is being defended by the Montgomery County Prosecutor, rather than the Ohio Attorney General. Instead of the usual Answer with copies of the state court record, the Court has obtained the original state court records by writ of certiorari. (See Doc. Nos. 16, 19, 25.) The Common Pleas Court filings are numbered in the lower left-hand corner, indexed to a copy of the Common Pleas docket, and will be referred to herein as Record Entry No. ___ ("RE No.")

Pleas Judge G. Jack Davis, Jr. Written closing arguments were complete December 1, 2006, but Judge Davis died March 4, 2007, before rendering a decision.

On March 20, 2007, the prosecutor filed a Motion for Declaration of a Mistrial (RE No. 63) before Judge John W. Kessler[2]. The Motion recites the procedural history of the case as justification for a mistrial:

> On March 4, 2007 Judge Davis passed away without having rendered a verdict in the case. Since the trier of fact failed to render a verdict, a mistrial must be granted in order for the case to be concluded and to prevent the ends of public justice from being defeated.

*Id*. at 2. No authority is cited. The Motion has an attached Certificate of Service in which the prosecutor certifies he forwarded a copy to defense counsel by ordinary mail on the date of filing. *Id*. at 3. However, Judge Kessler had already granted the Motion; his Entry Declaring Mistrial (RE No. 64) was filed with the Clerk of Courts at 8:47 A.M. on March 20, 2007, simultaneously with the Motion. Thus the Motion was essentially considered *ex parte*. The Entry contains the conclusion that "a manifest necessity exists for this Court to declare a mistrial in order to prevent a failure of justice," but does not explain how Judge Kessler reached that conclusion.

On May 9, 2007, Judge Kessler filed a Request for Disqualification in which he stated as the reason:

> This case was original [sic] Judge Davis'. It was tried, but no verdict

---

[2]How the case was assigned to Judge Kessler as of March 20, 2007, is unclear. Judge Kessler had been retired as a judge of the Montgomery County Common Pleas Court for some time in March, 2007. The Court assumes he had been assigned to work by the Chief Justice of the Ohio Supreme Court, but no document to that effect appears in the record and the prosecutor suggests he was helping the visiting judge assigned to Judge Davis' docket because of the backlog. On April 17, 2007, and again on April 18, 2007, the case was formally transferred to Judge Kessler from Judge Davis by Common Pleas Administrative Judge Michael T. Hall (RE Nos. 65, 66).

>was rendered. After Judge Davis' death, there was discussion
>between π and Δ whether upon transfer here, both sides would agree
>to retry the case on the video record. The π has decided no,(emphasis
>sic)[3] therefore the case should return to Davis' docket for scheduling.

(RE No. 67). Thereupon Administrative Judge Hall transferred the case back to Judge Davis' docket (RE No. 68).

Visiting Judge William McCracken apparently covered Judge Davis' docket pending the appointment of a successor by the Governor[4]. On May 29, 2007, he continued the new trial to June 12, 2007 (Re No. 69). Then on June 11, 2007, Defendant Slagle filed a Motion to Dismiss on Double Jeopardy grounds (RE No. 70), noting:

> [t]here exists a complete audio/visual record of the trial. All of the written arguments have been submitted. Thus, any judge could review the videotape and be in the same position as Judge Davis was with regard to observing witness demeanor and making credibility determinations. This is no different from presenting a videotaped deposition of a witness to the trier of fact in any other trial, a practice which has been used extensively for many years.

*Id*. at 2. In its Response, the State argued the situation was analogous to declaration of a mistrial where a jury cannot reach a verdict (RE No. 72 at 5). Arguing that all trials in Ohio are "statutory," it claimed the case could not be "retried" on the video record because Ohio Revised Code Ch. 2945 does not authorize video trials.

---

[3]In the State's Response to Defendant's Motion to Dismiss Indictment, the prosecutor makes clear it was his decision not to allow another judge to decide the case on the videotape record (Re No. 72, at 3 -"However, the State of Ohio declined to agree to this retrial format **opting** instead to retry the case in the regular trial format before a judge or jury." (Empahsis added.)

[4]Again, there is no entry in the record of this case as to how Judge McCracken came to be assigned to this docket. He was not an elected judge of the Montgomery County Common Pleas Court.

By August 3, 2007, The Honorable Frances E. McGee had been appointed and taken office to succeed Judge Davis. On that date she denied the Motion to Dismiss, stating her reasons in full as follows:

> This Court finds that State has proven that there was a manifest necessity for declaring a mistrial (the death of the judge who conducted the Bench Trial, whose death occurred prior to rendering a verdict), and that the "ends of public justice would be otherwise defeated." State v. Morgan (1998), 129 Ohio App. 3d 838, 841-842 (quoting Green v. United States (1975), 355 U.S. 184, 187-188; see also State v. Coon, 2002 Ohio 1813, 2002 Ohio App. Lexis 1707, *4.

(RE No. 75 at 1.) Defendant appealed from this ruling, but the Montgomery County Court of Appeals dismissed the appeal, on the State's motion, for lack of a final appealable order, i.e., for lack of appellate jurisdiction. *State v. Slagle*, Case No. CA 22364 (Ohio App. 2nd Dist. Nov. 14, 2007)(unreported). The Ohio Supreme Court declined to exercise jurisdiction and Petitioner sought habeas relief here on April 29, 2008 (Petition, Doc. No. 1). The same day Judge McGee stayed proceedings in her court pending decision in this Court. Ripeness of the case for decision here has been substantially delayed by the need to adjudicate Respondent's Motion to Dismiss (Doc. No. 5) and a jointly requested ninety-day stay to allow negotiations (Doc. Nos. 17, 18). The case became ripe on final briefing as of June 22, 2009.

**Analysis**

This Court has jurisdiction to consider issuance of a writ of habeas corpus under 28 U.S.C. § 2241 because Petitioner alleges he is being held in custody of Respondent in violation of his rights under the United States Constitution. Respondent is located within this judicial district and

Petitioner's being held on bond by Respondent places him sufficiently in custody to permit invocation of this Court's habeas corpus jurisdiction. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984); *Hensley v. Municipal Court,* 411 U.S. 345 (1973); *Lawrence v. 48th District Court*, 560 F.3d 475, (6th Cir. 2009); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989).

The Supreme Court has made it plain that the Double Jeopardy Clause protects against a second trial, not just against conviction at a second trial. *Abney v. United States,* 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). For that reason, a double jeopardy claim is cognizable in federal habeas corpus prior to the "second" trial. *Justices of the Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984); *Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 408 (7th Cir. 1985); *Malinovsky v. Court of Common Pleas of Lorain County*, 7 F.3d 1263 (6th Cir. 1993). To put it another way, a habeas petitioner with a double jeopardy claim is not required to exhaust the remedy of direct appeal from a verdict at a second trial before invoking our habeas jurisdiction. "[F]ederal courts review pre-trial habeas claims premised on Double Jeopardy principles so long as 'those claims have been raised and rejected in the state trial court and under state law there is no right of interlocutory appeal.'" *Klein v. Leis*, 548 F.3d 425, 430 n.2 (6th Cir. 2008), *quoting Harpster v. Ohio*, 128 F.3d 322, 325 (6th Cir. 1997). Ohio courts do not generally consider a denial of a motion to dismiss on double jeopardy grounds to be a final appealable order, *State v. Crago*, 53 Ohio St. 3d 243, 244, 599 N.E. 2d 1353 (1990), and the Montgomery County Court of Appeals applied that principle explicitly in this case.

Because this action is brought under 28 U.S.C. § 2241 rather than § 2254, it might be questioned whether the post-judgment standard of review of state court decisions adopted in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the

"AEDPA") applies to this case. However, neither party has raised that question and the Sixth Circuit had instructed that the AEDPA be followed in § 2241 cases under those circumstances. *Klein*, 548 F.3d at 431 n. 4, citing *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008).

Under AEDPA, a writ of habeas corpus may be issued regarding a claim adjudicated on the merits in a state court only if said adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To grant relief under the "contrary to" prong of 28 U.S.C. § 2254(d)(1), a federal court must find that the state court either did not apply the law established by Supreme Court precedent or diverged from a decision of that court in a case with "materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002), citing *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). The "clearly established Federal law" to which a state court decision is compared consists of "holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Klein*, 548 F.3d at 431, quoting *Cristini v. McKee,* 526 F.3d 888, 897 (6th Cir. 2008). See *Williams*, 529 U.S. at 364. To grant relief under the "unreasonable application" prong, a federal court must find that the state court "correctly identifie[d] the governing legal principle…but unreasonably applie[d] it to the facts of the particular case." *Bell*, 535 U.S. at 694, citing *Williams*, 529 U.S. at 405-06). An "unreasonable application" is one that is "objectively unreasonable," distinguishable from one where "a federal habeas court…concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. 410-11. Accordingly, the pertinent question is "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409 (emphasis added).

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The Supreme Court has identified "two vitally important interests" implicated in Double Jeopardy jurisprudence: "[T]he finality of judgments" and "the principle that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.'" *Yeager v. United States*, 129 S. Ct. 2360, 2365-66 (2009) quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957). Where the defendant consents to or initiates a mistrial, the Double Jeopardy Clause does not protect against a second prosecution; however, "when the defendant opposes the grant of a mistrial, he may not be retried unless there was a manifest necessity for the grant of the mistrial or the failure to grant the mistrial would have defeated the ends of justice." *Gilliam v. Foster*, 75 F.3d 881, 893 (4th Cir. 1996), citing *United States v. Dinitz,* 424 U.S. 600, 606-07 (1976); *Wade v. Hunter,* 336 U.S. 684, 690 (1949).

Justice Story's enunciation of the "manifest necessity" standard in *United States v. Perez*, 9 Wheat. 579 (1824) is the foundation of mistrial jurisprudence, and thus bears repeating:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent

> circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*Perez*, 9 Wheat. at 580. See also *United States v. Scott,* 437 U.S. 82, 93 (1980); *Arizona v. Washington*, 434 U.S. 497, 514 (1978) ("[R]eviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial."); *Illinois v. Somerville*, 410 U.S. 458, 462-63 (1973).

Where the defendant objects to a mistrial, the Supreme Court has described the burden on the State to prove "manifest necessity" as "a heavy one," observing: "[W]e assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Washington*, 434 U.S. at 506. The degree of necessity required is a reflection of the spectrum of scrutiny to which mistrials are subject under the Double Jeopardy Clause. The lowest scrutiny is applied where a mistrial is declared because of a hung jury, and the highest where "the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Id*. at 507-10.

The Supreme Court has observed that the "manifest necessity" standard is one that cannot "be applied mechanically or without attention to the particular problem confronting the trial judge"; rather, it is an inquiry specific to the particular facts of the case. *Id*. at 506. See also *Downum v. United States*, 372 U.S. 734, 737 (1963). The Supreme Court in *Washington* was satisfied that the

"sound discretion" standard was met because "the trial judge acted responsibly and deliberately, and accorded careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding." *Id.* at 516. "Sound discretion" is thus the essential element of the "manifest necessity" standard: It is not merely whether or not a high degree of necessity exists, but the manner in which the inquiry is conducted by the trial judge. Referencing *Washington*, the Sixth Circuit has cautioned that despite the fact that form is not paramount, "[t]he exercise of discretion stands on much firmer ground…when it is apparent on the face of the record the reasons for a particular decision, and the analytic process leading to that conclusion." *Johnson v. Karnes*, 198 F.3d 589, 595 (6th Cir. 1999).

In *United States v. Jorn,* 400 U.S. 470, 473 (1971), the Court found that the trial judge did not exercise sound discretion where he *sua sponte* declared a mistrial to allow witnesses for the prosecution to consult with attorneys prior to testifying. The Court noted that "no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly that, had the prosecutor been disposed to suggest a continuance, or the defendant to object…there would have been no opportunity to do so." *Id.* at 487. The Court's determination that retrial was barred was ultimately informed by the fact that "[w]hen one examines the circumstances…it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity." *Id.* at 487, citing *Perez*, 9 Wheat. at 580.

In *Ross v. Petro*, 515 F.3d 653, 659 (6th Cir. 2008), the Sixth Circuit reversed the district court grant of a writ of habeas corpus and determined the state court had properly found a "manifest necessity" for mistrial where the state appellate court observed that the judge "had exercised 'sound discretion' in that she 'allowed the parties to state their positions, considered their competing

interests, and made a thorough inquiry into reasonable alternatives.'" *Id.,* quoting *State v. Ross*, No. 20980, 2002 WL 31890088, at *6 (Ohio App. 9th Dist. Dec. 31, 2002). The court in *Petro* contrasted the circumstances of the mistrial with those in *Jorn*, finding the trial judge "did not act abruptly, but gave the parties opportunity to consider the ramifications… gave the parties opportunity to state their positions and proposals on the record…and explicitly considered and rejected at least some alternatives." *Petro*, 515 F.3d at 662. This exposition of the judge's conduct indicated that "the court of appeals at least implicitly held that she had exercised sound discretion." *Id*. at 663.

Judge Kessler's action in declaring a mistrial was not taken in the heat of the moment when something untoward had occurred to disrupt an ongoing trial. However, he does appear to have treated the declaration of mistrial as a routine matter, a loose end which had to be cleaned up from the backlog left by Judge Davis' untimely death. The simultaneous filing of the motion and entry strongly suggests the prosecutor prepared both documents and Judge Kessler signed the entry even before the motion was filed, as a judge might, for example, sign a warrant for a probation violator upon seeing a violation report and allow the probation officer to make one trip to the clerk's office instead of two. In a busy urban trial court such as the Montgomery County Common Pleas Court, such apparent efficiencies are hardly surprising. Judge Kessler probably suspected there would be no dispute of the mistrial motion by Defendant, as if everyone would understand that there had to be a mistrial because Judge Davis had died[5].

However, once the Petitioner did object, the State and the Common Pleas Court seemed to

---

[5]To avoid this problem, our Court has adopted S.D. Ohio L. R. 7.3, which requires an attorney filing a motion which he or she expects to be unopposed to confirm that with opposing counsel and include the consultation in the body of the motion, so that the assigned judge can act promptly without waiting the usual twenty-one days under the local motion practice, but also can be assured he or she is not acting effectively *ex parte*.

be locked into the position originally taken. Thus the prosecutor acted as if the State could decide at its option whether to have the case decided on the video record or retry the case. (See note 3, *supra*.) Once the case had been assigned to Judge McGee, she endorsed the State's choice of that option without discussing the interests of the Petitioner at all and without giving any reasoning behind her "manifest necessity" conclusion.

The exercise of sound discretion is not shown merely by uttering the conclusion that there was a manifest necessity for a mistrial. Judge Kessler granted the mistrial without giving Petitioner an opportunity to be heard. Judge McGee affirmed that conclusion without a hearing and without giving any indication on the record that she had considered what Petitioner had written.

The Magistrate Judge concludes that the Common Pleas decision to grant a mistrial is an objectively unreasonable application of clearly established Supreme Court law based on the aggregation of the following facts:

1. The original declaration of mistrial was entered without giving Petitioner an opportunity to be heard.
2. Judge McGee's decision does not take into account the Petitioner's interest in confining the State to the one opportunity it had to present evidence. Practically any party can benefit from a "dry run," which is one of the reasons a criminal defendant has a right to a decision on the record created in the first trial. See *Yeager, supra.*
3. Judge McGee's decision does not discuss the alternative of a decision on the video record already created – not a video "re-trial," but a decision on the evidence already presented. While watching video may not permit as full a weighing of "demeanor" evidence as being

present in person[6], as Petitioner pointed out in his Motion to Dismiss, American courts routinely allow triers of fact to make such determinations from video depositions.

Having concluded that a second trial would violate the Double Jeopardy Clause, this Court must decide on a remedy. Petitioner asserts that nothing short of a dismissal with prejudice will properly vindicate his interests, but the Court disagrees. There is still completely available the process which Petitioner agreed to in the first instance: decision on the video record already created completely vindicates Petitioner's interest in avoiding a second trial while protecting the ends of justice which would be thwarted without a verdict because of Judge Davis' untimely death.

It is accordingly respectfully recommended that this Court issue a conditional writ of habeas corpus providing that Petitioner shall be discharged from further responding to the Indictment unless the Common Pleas Court renders a decision on the video record already created not later from 180 days from the date judgment is entered in this matter.

August 3, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

---

[6] The ability to trial judges competently to assess credibility from observing demeanor is, of course, a staple of appellate deference to the trial courts. Whether that deference is scientifically warranted is another question. I note that the deference is being eroded in the face of video records for appellate courts to view. See *Scott v. Harris,* 550 U.S. 372, 380 (2007)(Supreme Court decides objective reasonableness by watching cruiser video). See also *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007)(Sixth Circuit does same, including video not seen by the trial court). If it does not offend due process to have facts decided by appellate judges from video records, having trial judges do the same should be acceptable to the State, given its acceptability here to the Defendant.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).